1  Karen I. Boyd (SBN 189808)
   boyd@turnerboyd.com
2  Jennifer Seraphine (SBN 245463)
   seraphine@turnerboyd.com
3  Keeley I. Vega (SBN 259928)
   vega@turnerboyd.com
4  Joshua Rayes (SBN 316208)
   rayes@turnerboyd.com
5  TURNER BOYD LLP
   702 Marshall Street, Suite 640
6  Redwood City, CA 94063
   Telephone: 650.521.5930
7  Facsimile: 650.521.5931

8  Attorneys for Plaintiff
   ALIGN TECHNOLOGY, INC.,

9

## UNITED STATES DISTRICT COURT

10

## NORTHERN DISTRICT OF CALIFORNIA

11

### SAN JOSE DIVISION

12

| | |
|---|---|
| ALIGN TECHNOLOGY, INC., | ) CASE NO. 5:18-cv-06663 |
| Plaintiff, | ) |
| v. | ) **COMPLAINT FOR:** |
| STRAUSS DIAMOND INSTRUMENTS, INC., | ) **(1) UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN UNDER 15 U.S.C. § 1125(a);** |
| Defendant. | ) **(2) FEDERAL TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1114;** |
| | ) **(3) FEDERAL TRADEMARK COUNTERFEITING UNDER 15 U.S.C. § 1114;** |
| | ) **(4) FEDERAL TRADEMARK DILUTION UNDER 15 U.S.C. § 1125(C);** |
| | ) **(5) VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200;** |
| | ) **(6) VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17500;** |
| | ) **(7) COMMON LAW TRADEMARK INFRINGEMENT, UNFAIR COMPETITION AND PASSING OFF; and** |
| | ) **(8) PATENT INFRINGEMENT UNDER 35 U.S.C. § 271** |
| | ) **JURY TRIAL DEMANDED** |

COMPLAINT                                      CASE NO. 5:18-cv-06663

Plaintiff Align Technology, Inc. ("Plaintiff" or "Align") files this complaint against Defendant Strauss Diamond Instruments, Inc. ("Defendant" or "Strauss Diamond") and alleges the following:

## INTRODUCTION

1.     Plaintiff Align brings this action to stop Defendant Strauss Diamond from engaging in unfair competition through its false and misleading advertising of its knock-off MagicSleeve product, to the detriment of Plaintiff Align and its genuine iTero Element product, and to the detriment of consumers who are likely to be confused and misled by Defendant's intentional, unlawful conduct.

2.     Defendant's false and misleading statements are intended to, and do, falsely suggest to consumers that the MagicSleeve product is sponsored or endorsed by Align.  However, Align does not endorse the MagicSleeve product, which is of substantially lower quality than Align's iTero Element product.

3.     Defendant's conduct is in direct violation of federal and California laws that protect against unfair competition and false designation of origin.  In the course of its unfair and unlawful conduct, Defendant has also infringed and continues to infringe Align's federally protected intellectual property rights, including Align's federally registered trademarks for INVISALIGN and ITERO, and Align's U.S. Patent No. D774,193.

4.     Defendant's conduct has damaged and will continue to cause damage to Align, including to Align's stellar business reputation and the substantial goodwill that Align has cultivated over the past 20 years.  Defendant's conduct also causes harm to consumers, who are likely to be misled into believing that Align is somehow affiliated with or endorses the MagicSleeve product, and that its quality is therefore consistent with Align's reputation, which it is not.  The relief requested by Align is therefore both necessary and appropriate in this case.

## THE PARTIES

5.     Plaintiff Align is a Delaware corporation incorporated in April 1997, with its principal place of business in San Jose, California.

6.     On information and belief, Defendant Strauss Diamond is a Florida corporation with a principal place of business at 14 Office Park Drive, Suite 8, Palm Coast, Florida 32137.  Defendant Strauss Diamond may also be incorporated in the state of Connecticut.

7.     On information and belief, Defendant Strauss Diamond is a subsidiary or division of Strauss & Co. ("Strauss & Co."), an Israeli corporation with a principal place of business at 19, Hayezira St. Industrial Zone, P.O. Box 2521, Ra'anana, 4336363, Israel.

## JURISDICTION AND VENUE

8.     This is an action for false and misleading advertising and trademark infringement under the Lanham Act, 15 U.S.C. § 1051 *et seq.* and patent infringement under 35 U.S.C. § 271.

9.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S. C. §§ 1331 and 1338(a).

10.     All other claims in this action arise out of the same transaction or occurrence, such that this Court has supplemental jurisdiction over all additional claims asserted in this case under 28 U.S.C. § 1367(a).

11.     This Court has personal jurisdiction over Defendant Strauss Diamond by virtue of the facts that Defendant conducts business in the state of California, has availed itself of the rights and benefits under California law, and has engaged in substantial and continuous contacts in the state of California.  Defendant makes, uses, offers to sell, and/or sells its infringing product in this District. Defendant has also directed its false and misleading statements regarding its MagicSleeve product to consumers in this District.

12.     Venue is proper over Plaintiff Align's claims for false and misleading advertising and trademark infringement in this District pursuant to 28 U.S.C. § 1391(b).  This Court has pendent venue over all other claims asserted in this case.

## INTRADISTRICT ASSIGNMENT

13.     Pursuant to Civil Local Rule 3.2(c), this case is subject to intradistrict assignment.

## FACTUAL BACKGROUND

**A.  Plaintiff Align and its iTero Element Scanner Technology**

14.     Plaintiff Align is a global medical device company founded in 1997 that invents, makes and sells industry-leading innovative products that help dental and orthodontic professionals deliver effective, cutting-edge options to their patients.  Align is engaged in the design, manufacture and

marketing of Invisalign clear aligners and iTero intraoral scanners and services for orthodontics, restorative and aesthetic dentistry.

15. The Invisalign system is a proprietary method for treating malocclusion based on a series of doctor-prescribed, custom manufactured, clear plastic, removable aligners. The Invisalign clear aligners—sometimes called clear braces—straighten teeth using clear trays that can be removed (for eating and teeth cleaning), have no metal brackets or wires to cause irritation, and require significantly less time in the orthodontist's chair.

16. Align has also provided numerous other high quality medical and dental devices to customers for over twenty years, and in the process has built a stellar reputation and acquired substantial good will.

17. One of Align's successful products is its iTero Element scanner.[1] The iTero Element scanner, in conjunction with Align's proprietary software, creates 3D imaging of an intraoral surface, such as the teeth and gums. By enabling the dental practitioner to create a 3D image of the patient's teeth (digital scan) using a handheld intraoral scanner inside the mouth, digital scanning is more efficient and precise and more comfortable for patients, compared to the mess, discomfort and subjective nature of taking physical impressions.

18. The digitally scanned model is also more accurate than a physical impression and substantially reduces the rate of restoration "remakes" so that patients are recalled less often and the appointment time for the restoration is shorter because of fewer adjustments which results in greater overall patient satisfaction.

19. The digital model file can be used for various procedures and services including fabrication of physical dental models for use by labs to create restorative units such as veneers, inlays, onlays, crowns, bridges and implant abutments; digital records storage; orthodontic diagnosis; orthodontic retainers and appliances; and Invisalign digital impression submission.

---

[1] There are three models of Align's iTero Element intraoral scanner system:  the iTero Element, the iTero Element 2, and the iTero Element Flex.  These models are herein collectively referred to as the "iTero Element scanner."

20.     The iTero Element scanner works in just minutes.  The system includes a computer system with an attached "wand," which collects 6,000 images per second as it scans the patient's mouth (teeth and gums).  The iTero Element scanner then produces a precise, high-resolution, 3D interactive image of the patient's teeth.

21.     As stated, Align's iTero Element scanner eliminates the need for traditional teeth impressions typically taken with an elastomeric or other material that were uncomfortable, often unreliable, and had an unpleasant taste and feel.

22.     Align has helped treat over five million patients with its Invisalign system and is driving the evolution in digital dentistry with the iTero Element scanner.

23.     With the iTero Element scanner, Align offers the iTero Element Disposable Scanner Sleeve, which slides over the part of the scanning wand that is inserted into the patient's mouth during scanning.  Align's iTero Element sleeve is shown at right.



24.     The iTero Element sleeve incorporates a proprietary design and glass coating that have been specifically developed to deliver the iTero Element scan accuracy, quality and defogging properties, as advertised and provided by Align.

25.     The iTero Element sleeve includes a window opening having a piece of glass with anti-reflective coating to optimize the quality of the 3D scan.  This piece is described herein as the "window."

26.     The glass window is secured in place in the iTero Element sleeve with a bracket.

27.     In use, the iTero Element sleeve "clicks" into place over the wand, indicating to the user that the sleeve is in place, and ensuring a secure and safe fit and grip.  This correct positioning also ensures a precise scan.

28.     To avoid cross-contamination, the iTero sleeves are disposable and for single-use only.

29.     Align also offers a reusable protective sleeve that closely resembles the disposable sleeve to protect the optical surface lens when the scanning unit is not in use.  While the iTero Element

sleeve used with a patient is white, the protective sleeve is blue.  The protective sleeve has a permanent opaque cover over the window (described above).

30.     Align's iTero Element scanner system represents a breakthrough in the manufacturing principle of "mass customization" and a vast improvement over conventional methods for treating dental and orthodontic conditions.

31.     Align has devoted a tremendous amount of time and resources—technical research and development and design resources—to develop its cutting-edge technology and to promote its branded products.  Align has also invested hundreds of millions of dollars in product marketing; advertising, including media advertising; sales force compensation; marketing personnel-related costs; and clinical education.  Align's significant investments and high quality standards have resulted in considerable customer goodwill and a superior reputation in the industry.

**B.  Align's Registered Trademarks**

32.     Align is the owner of U.S. Trademark Registration No. 4941492 for ITERO for use in connection with "Dental services; medical and orthodontic services; orthodontic and dentistry services; dental, orthodontic, periodontic, endodontic and paedodontic services and treatments; design and creation of orthodontic treatment plans for individuals; consulting services in the dental and orthodontic industries; advisory services and the provision of information relating to dental and orthodontic techniques, materials and products; advisory and consultancy services relating to orthodontics, endodontics, paedodontics, periodontics, and restorative dental treatments, including the provision of such services online via the Internet or extranets."

33.     Align is the owner of U.S. Trademark Registration No. 4926817 for ITERO for use in connection with "Training in the fields of dentistry and orthodontia;" and "Application service provider (ASP) featuring software for use in providing orthodontic and dental treatment services; providing temporary use of on-line non-downloadable software for providing orthodontic and dental treatment services; providing temporary use of on-line non-downloadable software for providing orthodontic and dental treatment services."

34.     Align is the owner of U.S. Trademark Registration No. 4838523 for ITERO ELEMENT for use in connection with "Computer software, namely, digital imaging software used to depict tooth

and jaw movement and proposed treatment plans; computer scanning software; digital dental impression software; computer software used to prepare 3D digital models of teeth and jaws; computer software applications for portable and hand-held electronic devices, namely, software for use in providing dental and orthodontic treatment services; telemedicine systems consisting of computer software, computer hardware, and intra-oral scanning cameras used for medical digital image capture, storage, retrieval and transmission over telecommunications media for use in the field of dentistry and orthodontics; computer software used in creation of individually customized courses of orthodontic treatment; computer software used to provide, track and modify proposed courses of orthodontic treatment and patient data related thereto; software for dental professionals for use in evaluation of individual dentition and for planning orthodontic treatments and for use in restorative dentistry, in the preparation and fitting of crowns and bridges, and in restorative dental treatment;" and "Orthodontic, dental and oral healthcare devices, namely, scanning cameras for capturing medical images, computer workstations for processing and displaying captured medical images for purposes of design of dental appliances and prosthetics and monitoring patient treatments;" and "Electronic storage and retrieval of digital dental and orthodontic images;" and "Application service provider (ASP) featuring software for use in providing orthodontic and dental treatment services; providing temporary use of on-line non-downloadable software for providing orthodontic and dental treatment services; providing temporary use of on-line non-downloadable software for providing orthodontic and dental treatment services."

35.    Align is the owner of U.S. Trademark Registration No. 3687585 for ITERO for use in connection with "Telemedicine systems consisting of computer software, computer hardware, and intra-oral scanning cameras used for medical digital image capture, storage, retrieval and transmission over telecommunications media for use in the field of orthodontics and dentistry; software for computer workstations, namely, computer software for processing and displaying captured medical images;" "Orthodontic, dental and oral healthcare devices, namely, scanning cameras for capturing medical images, computer workstations for processing and displaying captured medical images for purposes of design of dental appliances and prosthetics and monitoring patient treatments;" "Custom manufacture of dental prosthetics;" and "Computer-aided modeling in the dental field, namely, providing dentists

with three-dimensional computer representations of dental model images for dental impressions and study casts."

36.     The marks identified in the preceding 4 paragraphs are referred to herein collectively as the ITERO Marks.

37.     Align is the owner of U.S. Trademark Registration No. 4025403 for INVISALIGN for use in connection with "Consultation services in the fields of dentistry and orthodontia."

38.     Align is the "U.S. Trademark Registration No. 3191195 for INVISALIGN for use in connection with: "Training in the use of orthodontic appliances; and Orthodontic and dentistry services."

39.     Align is the owner of U.S. Trademark Registration No. 3060471 for INVISALIGN for use in connection with "Computer software, namely digital imaging software used to depict tooth movement and proposed treatment plan; computer software used to provide, track and modify proposed courses of orthodontic treatment and patient data and information related thereto."

40.     Align is the owner of U.S. Trademark Registration No. 3911988 for INVISALIGN for use in connection with "Computer software, namely, digital imaging software used to depict tooth movement and proposed treatment plans; computer software used in creation of individually customized courses of orthodontic treatment; computer software used to provide, track and modify proposed courses of orthodontic treatment and patient data related thereto;" and "Dental apparatus, namely, orthodontic appliances;" and "Custom manufacture of orthodontic appliances; dental laboratory services;" and "Training in the fields of dentistry and orthodontia;" and "Dentistry; orthodontic services; consultation services in the fields of dentistry and orthodontia."

41.     Align is the owner of U.S. Trademark Registration No. 3418121 for INVISALIGN for use in connection with "Custom manufacture of orthodontic appliances, dental laboratory services."

42.     Align is the owner of U.S. Trademark Registration No. 2409473 for INVISALIGN for use in connection with "Dental apparatus, namely plastic orthodontic appliance."

43.     The marks identified in the preceding 6 paragraphs are collectively referred to herein as the INVISALIGN Marks.  The ITERO Marks and INVISALIGN Marks are collectively referred to herein as "the ITERO and INVISALIGN Marks."

44.     By virtue of its use and federal registrations, Align has the exclusive right to use the ITERO and INVISALIGN Marks, as well as any marks confusingly similar thereto, in commerce in connection with the goods and services described in the foregoing paragraphs.

45.     Align's INVISALIGN Marks additionally have become famous within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c) and are entitled to the widest scope of protection under federal and state anti-dilution laws.

**C.   Align's Design Patent**

46.     Plaintiff Align has protected its innovative designs through design patents issued by the United States Patent and Trademark Office.

47.     On December 13, 2016, United States Design Patent No. D774,193 ("the '193 patent") was duly and legally issued by the United States Patent and Trademark Office.  A copy of the '193 patent is attached as Exhibit A.

48.     Align owns all right, title, and interest in, and has the right to sue and recover for past, present, and future infringement of the '193 patent.

49.     The '193 patent covers the ornamental design for an intraoral scanner.  Figure 1 of the '193 patent is shown here:



'193 patent, Fig. 1

**D.   Defendant's False and Misleading Advertising, Trademark Infringement, and Patent Infringement**

50.     Defendant is a distributor of dental device products, including copycat products of other companies' products.

51.     Defendant is presently manufacturing (or having manufactured), marketing, and selling a product that it calls the MagicSleeve.

52.     Defendant's MagicSleeve product is a sleeve that covers the wand portion of the iTero scanner system.

53.     Defendant's MagicSleeve is a direct knock-off of Align's own iTero Element scanner sleeve, except that Defendant's MagicSleeve is significantly inferior in quality to Align's genuine product.  Defendant's MagicSleeve is blue, and not white like Align's iTero Scanner sleeve; however, the blue color is the same as Align's protective sleeve.

54.     Defendant describes the MagicSleeve on its website as an "[a]utoclavable, silicone sleeve for Scanner with glass inserts included."  (https://straussdiamond.com/product/magic-sleeve/.)

55.     Defendant's MagicSleeve is shown in the side-by-side comparison with Align's iTero Element scanner sleeves below:





MagicSleeve              iTero Element Protective Sleeve              iTero Disposable Sleeve

56.     Defendant markets and advertises the MagicSleeve on numerous platforms, including on its own website and on social networking sites Facebook, Instagram and YouTube.

57.     Defendant's advertising is misleading because it implies to consumers an association with Align and Align's iTero Element scanner system.  For example, shown here is an image of Defendant's advertising that includes the MagicSleeve fitted on the wand of the iTero Element scanner, with one of the ITERO Marks visible at the lower edge of the computer screen, and invites customers to "Order Now."  It is difficult if not impossible for consumers to know whether the blue sleeve shown on the wand in this advertisement is Defendant's MagicSleeve, or instead Align's protective sleeve, which is also blue.



58. Defendant's advertising of its MagicSleeve is also false and misleading to consumers because it attributes the benefits of the iTero Element scanner system to the MagicSleeve. For example, Defendant claims in printed and video advertisements on Facebook, Instagram, YouTube, and its own website, that its MagicSleeve results in a "25% faster scanning time." Of course, any faster scanning time over the prior systems is a result of Align's iTero Element scanner system, and the MagicSleeve does not improve scanning time at all. In fact, because the MagicSleeve must be autoclaved after each use and includes a removable glass window that must be inserted prior to use, using it only increases—not decreases—the time required.

59. Defendant also misrepresents that the MagicSleeve creates "just as sharp of a scan." On information and belief, the MagicSleeve is inferior to Align's iTero Element protective sleeve in terms of scan quality, including but not limited to because of the risks of user error caused by the unsecured window and absence of any attachment mechanism.

60. There is also no mechanism to connect the removable/replaceable window to the MagicSleeve, increasing the likelihood that the window will be in an incorrect position and result in a poor scan.

61. Also, because the window in the MagicSleeve does not have an anti-reflective coating, and because it is thicker than the glass with which the iTero Element scanner is calibrated, use of the MagicSleeve can result in lower view finder and 3D scan quality.

62.     Additionally, the absence of any mechanism to secure the glass in the MagicSleeve increases the chances that there will be no physical contact between the glass window and the corresponding glass on the wand, which is necessary to ensure the thermal connection between the two required for an effective scan.

63.     During assembly, the MagicSleeve glass may become dirty, acquire finger prints or other contamination that may distort the scan and cause image capture issues during scanning.

64.      Also, because the MagicSleeve is not sealed, fluids may leak inside and wet the wand, resulting in cross contamination between patients.  This may also occur if the scan is performed without the separate glass window piece.

65.     The inferior qualities of the MagicSleeve thus impact user experience, compromise patient safety by increasing the risk of cross-contamination, and pose risk of damage to the scanning system.

66.     As described above, Defendant has used and is continuing to use Align's federally registered ITERO and INVISALIGN Marks without permission or authority.  For example, in numerous posts on Instagram, Defendant promotes its MagicSleeve product alongside of the iTero scanner system clearly showing the iTero trademark.

67.     Defendant also uses Align's trademarks as associated hashtags, including #itero, #iteroscanner, #invisalign, and #iteroelement.

68.     Defendant's false and misleading advertising is likely to confuse consumers and cause the public to believe that Align has produced, sponsored, authorized, licensed, or is otherwise connected or affiliated with Defendant's products, services, or business activities.

69.     Defendant's use of Align's ITERO and INVISALIGN Marks is also likely to cause confusion or mistake among consumers as to Defendant's connection or affiliation with Align, as to the source of Defendant's products, and as to the sponsorship or approval of Defendant and its products by Align.

70.     Defendant's MagicSleeve also infringes Align's '193 patent.  As shown in the side-by-side comparison below, Defendant infringes Align's patented designs in the accused MagicSleeve product.



| '193 patent, Fig. 1 | MagicSleeve |

71.     On information and belief, Defendant intended to copy the designs covered by Align's '193 patent.

72.     Defendant has infringed and continues to infringe Align's '193 patent within the meaning of 35 U.S.C. § 271 at least by making, using, selling, offering to sell, and/or importing the infringing MagicSleeve product into the United States without Align's authorization.

73.     On information and belief, Defendant acted with knowledge of Align's design patents, including the '193 patent, has acted with reckless disregard and willfully and knowingly infringed Align's rights as to the '193 patent.

74.     Align has been damaged by the foregoing infringing and wrongful acts of Defendant, including, without limitation, suffering actual damages.

75.     Defendant's wrongful conduct and infringing activities will continue unless enjoined by this Court.

## COUNT I
## Unfair Competition and False Designation of Origin under 15 U.S.C. § 1125(a)

76.     Plaintiff Align realleges and incorporates by reference paragraphs 1 through 75 of this Complaint.

77.     Defendant has used in commerce false and misleading statements in its advertising of its MagicSleeve product that have caused and are likely to cause confusion, mistake, and deception as to the affiliation, connection, origin, or association of Defendant with Align, as to the true source of

Defendant's goods, and as to the sponsorship or approval of Defendant and Defendant's goods and services by Align.

78.    Defendant also markets its MagicSleeve product as safe and in certain ways an improvement on the iTero Element scanner sleeve, which statements are false.

79.    Defendant's actions constitute unfair competition and false designation of origin in violation of 15 U.S.C. § 1125(a).

80.    Align has no adequate remedy at law in that the amount of harm to Align's business and reputation and the diminution of the goodwill of Align's INVISALGN and ITERO marks are difficult to ascertain with specificity.

81.    Align is entitled to injunctive relief and to recover all damages, including attorney fees, that Align has sustained and will sustain, and all gains, profits, and advantages obtained by Defendant as a result of its acts alleged above in an amount not yet known, and costs pursuant to 15 U.S.C. § 1117, as well as prejudgment interest.

82.    Defendant has direct and full knowledge of Align's prior use of and rights in its marks. The knowing, intentional, and willing nature of Defendant's acts make this an exceptional case under 15 U.S.C. § 1117(a).

## COUNT II
## Federal Trademark Infringement under 15 U.S.C. § 1114

83.    Plaintiff Align realleges and incorporates by reference paragraphs 1 through 82 of this Complaint.

84.    Align owns the federally registered trademarks for INVISALIGN and ITERO identified above, as well as common law rights in these marks.

85.    Without Align's consent, Defendant has used the INVISALIGN and ITERO Marks in commerce to advertise and offer Defendant's products, including the MagicSleeve product.

86.    Defendant's infringing actions as described herein have caused or are likely to cause confusion, mistake, and/or deception among ordinary consumers as to the source, sponsorship, affiliation, or approval of Defendant's products and/or cause confusion or mistake as to any affiliation, connection, or association between Align and Defendant, in violation of 15 U.S.C. § 1114(a).

87.     Upon information and belief, Defendant's infringement has been and continues to be intentional, willful, and without regard to Align's rights.

88.     As a direct and proximate result of Defendant's willful and unlawful conduct, Align has been injured and will continue to suffer injury to its business and reputation unless Defendant is restrained by this Court from infringing Align's trademarks.

89.     Align has no adequate remedy at law in that the amount of harm to Align's business and reputation and the diminution of the goodwill of Align's INVISALGN and ITERO marks are difficult to ascertain with specificity.  Align is therefore entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

90.     Align is entitled to actual monetary damages in an amount to be determined at trial and to any profits made by Defendant in connection with its infringing activities.

91.      Because Defendant's infringement has been committed with the intent to damage Align, and to confuse and deceive the public, Align is entitled to treble its damages or Defendant's profits, whichever is greater, and to an award of costs and, this being an exceptional case, reasonable attorney fees pursuant to 15 U.S.C. § 1117(a) and (b).

## COUNT III
### Federal Trademark Counterfeiting under 15 U.S.C. § 1114

92.     Plaintiff Align realleges and incorporates by reference paragraphs 1 through 91 of this Complaint.

93.     Align owns the federally registered ITERO Marks, as described above, as well as common law rights in these marks.

94.     Without Align's consent, Defendant has used identical copies of the ITERO Marks in commerce to advertise, offer for sale, sell, and/or distribute Defendant's products, including the MagicSleeve product.

95.      Defendant's use of the counterfeit ITERO Marks is likely to cause confusion, mistake, or deception as to the source, sponsorship, affiliation, or approval of Defendant's products and/or cause confusion or mistake as to any affiliation, connection, or association between Align and Defendant.

96.     Upon information and belief, Defendant intentionally and willfully used the ITERO Marks knowing such designation to be counterfeit marks in connection with the sale, offering for sale, or distribution of goods.

97.     Defendant's actions described above and specifically, without limitation, Defendant's use of the ITERO Marks in connection with its product, constitutes trademark counterfeiting in violation of 15 U.S.C. § 1114.

98.     Upon information and belief, Defendant has made and will continue to make substantial profits and gain to which it is not in law or equity entitled.

99.     Align has been, and will continue to be, damaged and irreparably harmed by the actions of the Defendant, which will continue unless the Defendant is enjoined by this Court.

100.    Align has no adequate remedy at law in that the amount of damage to Plaintiff's business, reputation, and diminution of the ITERO Marks' goodwill is difficult to ascertain with specificity.  ALIGN is therefore entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

101.    Align is entitled to recover from Defendant all damages, including attorney fees, that Align has sustained and will sustain as a result of such infringing acts, and all gains, profits, and advantages obtained by Defendant as a result thereof, in an amount not yet known, as well as the costs of this action pursuant to 15 U.S.C. § 1117(a), attorney fees and treble damages pursuant to 15 U.S.C. § 1117(b), and/or statutory damages pursuant to 15 U.S.C. §1117(c).

### COUNT IV
### Federal Trademark Dilution under 15 U.S.C. § 1125(c)

102.    Plaintiff Align realleges and incorporates by reference paragraphs 1 through 101 of this Complaint.

103.    Align's INVISALIGN Marks are famous and distinctive and have been for many years prior to the first sale of the MagicSleeve by Defendant.

104.    Without authorization or license from Align, Defendant is using the INVISALIGN Marks in commerce in a manner that impairs the distinctive quality, and harms the reputation, of Align's INVISALIGN Marks.

105.   The acts and conduct of Defendant alleged herein occurred after Align's INVISALIGN Marks became famous and constitute dilution by blurring in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

106.   On information and belief, Defendant's acts of dilution are willful, deliberate, and in bad faith.

107.   Align has no adequate remedy at law.  Defendant's acts and conduct will cause immediate and irreparable injury to Align, to its goodwill and reputation, and to the public, and will continue to threaten such injury unless enjoined by this Court.

108.   Align is entitled to injunctive relief and to recover Align's actual damages and an award of Defendant's profits, as well as costs and Align's reasonable attorney fees, under 15 U.S.C. §§ 1025(c), 1116, and 1117.

## COUNT V
### Violation of California Business and Professions Code § 17200 *et seq.*

109.   Plaintiff Align realleges and incorporates by reference paragraphs 1 through 108 of this Complaint.

110.   Defendant has engaged in numerous unlawful and unfair practices, and promotions in violation of Section 17200, *et seq.,* of the California Business and Professions Code, including by among other things, the trademark and patent infringement described herein, and the unfair, deceptive, and misleading advertising about Defendant's MagicSleeve also described herein, such that members of the public are likely to be deceived and have been deceived as discussed previously.

111.   Defendant has engaged and will continue to engage in the unlawful, deceptive and unfair acts alleged herein, and thereby continue to violate § 17240, *et seq.*, of the California Business and Professions Code.  Injunctive relief pursuant to California Business & Professions Code §§ 17203 and 17535 is necessary to prevent and restrain further violations by Defendants.  Until and unless such an injunction is issued, Align and members of the public will continue to suffer irreparable harm for which there is no adequate remedy at law.

112.   Align is also entitled to an order of restitution and disgorgement of profits earned by Defendant by its wrongful conduct.

## COUNT VI
## Violation of California Business and Professions Code § 17500 *et seq.*

113.    Plaintiff Align realleges and incorporates by reference paragraphs 1 through 112 of this Complaint.

114.    Defendant has engaged in deceptive and misleading advertising in violation of § 17500, *et seq.* of the California Business and Professions Code, including by among other things, Defendant's misrepresentations regarding the association with Align and Align's iTero Element scanner system, and false and misleading statements regarding the attributes of the MagicSleeve product.

115.    Members of the public are likely to be deceived by Defendant's misrepresentations.

116.    Defendant has engaged and will continue to engage in the unlawful, unfair and deceptive acts alleged herein, and thereby continue to violate § 17500, *et seq.,* of the California Business and Professions Code.  Injunctive relief pursuant to California Business & Professions Code §§ 17203 and 17535 is necessary to prevent and restrain further violations by Defendant.  Until such an injunction is issued, Align and members of the public will continue to suffer irreparable harm for which there is no adequate remedy at law.

117.    Align is also entitled to an order of restitution and disgorgement of profits earned by Defendant by its wrongful conduct.

## COUNT VII
## Common Law Trademark Infringement,

118.    Plaintiff Align realleges and incorporates by reference paragraphs 1 through 117 of this Complaint as if fully set forth here.

119.    Align owns common law rights in the INVISALIGN and ITERO Marks.

120.    Defendant's unauthorized use of the INVISALIGN and ITERO Marks in commerce in connection with the manufacture and sale of its products, including the MagicSleeve product, is likely to cause confusion as to the source or sponsorship of these goods and services, and is likely to lead the public to believe that Align is affiliated with or sponsors or endorses Defendant and/or Defendant's goods and services, and is likely to mislead persons in the ordinary course of purchasing Defendant's

goods and services, thereby injuring the reputation and goodwill and unjustly diverting from Align to Defendant the benefits arising therefrom.

121.    Defendant's unlawful activities constitute trademark infringement, unfair competition, and passing off as proscribed by common law.

122.    Defendant's acts of trademark infringement, unfair competition, and passing off were committed, or will imminently be committed, willfully, knowingly, intentionally, and in bad faith.

123.    Defendant's acts or intended acts of trademark infringement, unfair competition, and passing off, unless enjoined by this Court, will threaten to cause Align irreparable damage, loss, and injury for which Align has no adequate remedy at law.

## COUNT VIII
### Patent Infringement under 35 U.S.C. § 271

124.    Plaintiff Align realleges and incorporates by reference paragraphs 1 through 123 of this Complaint as if fully set forth here.

125.    Defendant has infringed and continues to infringe the '193 patent by making, using, selling, and/or offering to sell in the United States, and/or importing into the United States its MagicSleeve product, which embodies the design covered by the '193 design patent.

126.    Plaintiff Align has been and will continue to be irreparably harmed by Defendant's infringement of the '193 patent.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Align respectfully prays for the following relief:

A    Defendant and all its agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through, or under authority from Defendant, or in concert or participation with Defendant, and each of them, be temporarily, preliminarily, and permanently enjoined and restrained from:

(i)    using the INVISALIGN and/or ITERO marks, or any other copy, reproduction, or colorable imitation or simulation of Align's INVISALIGN and/or ITERO marks on or in connection with Defendant's goods or services;

(ii)     using any trademark, service mark, name, logo, design or source designation of any kind on or in connection with Defendant's goods or services that is likely to cause confusion, mistake, deception, or public misunderstanding that such goods or services are produced or provided by Align, or are sponsored or authorized by or in any way connected or related to Align;

(iii)    using any trademark, service mark, name, logo, design or source designation of any kind on or in connection with Defendant's goods or services that dilutes or is likely to dilute the distinctiveness of the trademarks, service marks, names, or logos of Align;

(iv)    passing off, palming off, or assisting in passing off or palming off, Defendant's goods or services as those of Aligns, or otherwise continuing any and all acts of unfair competition as alleged in this Complaint; and

(v)     engaging in further acts of infringement of Align's patent;

B.      Defendant be ordered to recall all products sold with the use of the INVISALIGN and/or ITERO marks, or any other confusingly similar mark, which have been shipped by Defendant under its authority, to any customer including, but not limited to, any wholesaler, distributor, retailer, consignor, or marketer, and also to deliver to each customer a copy of this Court's order as it relates to said injunctive relief against Defendant;

C.      Defendant be ordered to deliver up for impoundment and for destruction all products in the possession, custody, or under the control of Defendant that are found to adopt, to infringe, or to dilute any of Align's trademarks or that otherwise unfairly compete with Align and its products and services;

D.      Defendant be compelled to account to Align for any and all profits derived by Defendant from the sale or distribution of infringing goods as described in this Complaint;

E.      Align be awarded all damages caused by the acts forming the basis of this Complaint, in an amount to be proven at trial, as well as prejudgment interest as authorized by law;

F.      Based on Defendant's knowing and intentional use of confusingly similar imitations of Align's INVISALIGN and ITERO Marks, the damages award be trebled and the award of Defendant's profits be enhanced as provided for by 15 U.S.C. § 1117(a);

G.     Defendant be required to pay to Align the costs of this action and their reasonable attorney fees pursuant to 15 U.S.C. § 1117(a), 35 U.S.C. § 285, and the state statutes cited in this Complaint;

H.     That Defendant pay over to Align statutory damages for its federal trademark counterfeiting under 15 U.S.C. § 1114, in an amount of up to $2,000,000 because Defendant's infringement is willful, as provided for by 15 U.S.C. § 1117(c);

I.     Reasonable funds for future corrective advertising;

J.     Punitive damages pursuant to California Civil Code § 3294;

K.     Restitution against Defendant and in favor of Align, including disgorgement of wrongfully obtained profits and any other appropriate relief;

L.     A judgment that Defendant has infringed Align's patent;

M.     A judgment awarding Align all damages adequate to compensate for Defendant's infringement of Align's patent, including Defendant's entire profit as permitted under 35 U.S.C. § 289, and in no event less than a reasonable royalty for Defendant's acts of infringement, including all pre-judgment and post-judgment interest at the maximum rate permitted by law;

N.     A judgment awarding Align all damages, including treble damages, based on any patent infringement found to be willful, pursuant to 35 U.S.C. § 284, together with prejudgment interest; and

O.     Any other remedy to which Align may be entitled, including all remedies provided for in 15 U.S.C. § 1117, Cal. Bus. & Prof. Code §§ 17200, et seq., 17500, et seq., and under any other California law.

## **JURY TRIAL DEMANDED**

Pursuant to Federal Rule of Civil Procedure 38(b), Align hereby demands trial by jury on all issues raised by this complaint.

Respectfully submitted,

Dated: November 1, 2018                          TURNER BOYD LLP

                                                 */s/ Jennifer Seraphine*
                                                 Jennifer Seraphine, SBN 245463
                                                 seraphine@turnerboyd.com
                                                 TURNER BOYD LLP
                                                 702 Marshall Street, Suite 640
                                                 Redwood City, CA 94063
                                                 Telephone: 650.521.5930
                                                 Facsimile: 650.521.5931

                                                 *Attorneys for Plaintiff*
                                                 *Align Technology, Inc.*